# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DEBORAH ANN VANHORN

        Plaintiff,

v.                                     Case No. 8:20-cv-728-JRK

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social
Security,

        Defendant.

_____/

## OPINION AND ORDER[2]

## I.   Status

Deborah Ann Vanhorn ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of post-traumatic stress disorder ("PTSD"), severe anxiety, panic disorder, acute stress disorder, nightmares, flashbacks, irritable bowel syndrome, memory and concentration issues, "massive weight gain," and

---

[1]    Kilolo Kijakazi recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 18), filed October 16, 2020; Reference Order (Doc. No. 20), entered October 16, 2020.

depression.[3] See Transcript of Administrative Proceedings (Doc. No. 19; "Tr." or "administrative transcript"), filed October 16, 2020, at 72, 85, 212 (capitalization and some emphasis omitted).

On November 14, 2017, Plaintiff filed an application for DIB, alleging a disability onset date of January 24, 2017. Tr. at 197.[4] The application was denied initially, Tr. at 71-81, 82, 83, 100-02, and upon reconsideration, Tr. at 84-95, 96, 97, 104-09.

On June 27, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which she heard from Plaintiff, who was represented by counsel, a vocational expert ("VE"), and Plaintiff's mental health counselor (James Cusack, Ph.D.).[5] See Tr. at 32-70. On July 25, 2019, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 15-27.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council, see Tr. at 194-96, and submitted additional evidence in the form of a brief authored by Plaintiff's counsel, Tr. at 4, 5; see also Tr. at 281-83 (brief). On February 27, 2020, the Appeals Council denied Plaintiff's request for review,

---

[3]        One of Plaintiff's alleged conditions is intentionally omitted from this list for privacy reasons. This omission does not affect the issues or the Court's analysis.

[4]        Although actually completed on November 14, 2017, see Tr. at 197, the protective filing date of the application is listed elsewhere in the administrative transcript as October 24, 2017, see, e.g., Tr. at 72, 85.

[5]        Dr. Cusack is a licensed mental health counselor, who has been treating Plaintiff since January 2017. See Tr. at 34-35, 39-40; see also Tr. at 733-45 (Dr. Cusack's progress notes).

Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On March 27, 2020, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues that "[t]here was insufficient cause for the testimony of both [Plaintiff] and [Dr. Cusack] as to the limitations she experiences in day-to-day life to be given less than great weight." Memorandum in Opposition to the Commissioner's Decision (Doc. No. 24; "Pl.'s Mem."), filed January 18, 2021, at 6; see id. at 2, 5-10.[6] On March 19, 2021, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 27; "Def.'s Mem.") addressing Plaintiff's argument. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in

---

[6]     As Plaintiff's Memorandum does not contain numbered pages, citations to it are in accordance with the pagination assigned by the Court's electronic filing system (CM/ECF).

[7]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r of Soc. Sec., 7 F.4th 1094, 1104 (11th Cir. 2021) (citation omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 17-27. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 24, 2017, the alleged onset date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: [PTSD], anxiety disorder, depression, plantar fascial fibromatosis, tendinitis, and tenosynovitis." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform medium work as defined in 20 [C.F.R.
> §] 404.1567(c) except [Plaintiff] can occasionally lift or carry 50

4

pounds and she can frequently lift or carry 25 pounds. [Plaintiff]
can sit for 6 hours and she can stand and/or walk for 6 hours.
Pushing and pulling is limited to as much as she can lift and carry.
[Plaintiff] is able to perform simple, routine tasks. [She] can
frequently have contact with supervisors and occasionally with co-
workers and the public. [Plaintiff] is able to make simple work-
related decisions and she can maintain attention, concentration,
persistence and pace in two-hour increments throughout an 8-hour
workday, with normal breaks. Additionally, [Plaintiff] is limited to
no fast pace or strict quota based work.

Tr. at 19-20 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "Community Organization Worker" and "Community Aid." Tr. at 25 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("50 years old . . . on the alleged disability onset date"), education ("at least a high school education and is able to communicate in English"), work experience, and RFC, the ALJ relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 26 (emphasis and citation omitted), such as "Industrial Cleaner," "Warehouse Worker," and "Horticultural Worker," Tr. at 27. The ALJ concluded that Plaintiff "has not been under a disability . . . from January 24, 2017[ ] through the date of th[e D]ecision." Tr. at 27 (emphasis and citation omitted).

## III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's

conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted).

It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As mentioned above, Plaintiff's argues that "[t]here was insufficient cause for the testimony of both [Plaintiff] and [Dr. Cusack] . . . to be given less than

6

great weight." Pl.'s Mem. at at 6; see id. at 5-10. Specifically, Plaintiff alleges that the ALJ did not sufficiently evaluate that "most activities were completed, in whole or in part, by [Plaintiff]'s spouse" and inadequately weighed "testimony of [Plaintiff's] extreme difficulties in interaction with others" with respect to her mental health impairments. Id. at 9.

Responding, Defendant asserts the ALJ did not err because "the ALJ [] considered inconsistencies within Plaintiff's testimony, objective information from her treatment records, and Plaintiff's treatment history, as reason to discount Plaintiff's subjective complaints." Def.'s Mem. at 5.[8]

For ease of discussion, the undersigned first addresses the arguments regarding Plaintiff's testimony, followed by a discussion of Dr. Cusack's testimony.

## A.   Plaintiff's Testimony

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing

---

[8]   Defendant does not address Dr. Cusack's opinions or the ALJ's finding "that Dr. Cusack's testimony was not persuasive[.]" Tr. at 21; see Def.'s Mem. at 4-11.

Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"When evaluating the claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

In 2017, the SSA issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find

that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e D]ecision." Tr. at 22. The ALJ determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms, are "inconsistent because they are not supported." Tr. at 22.[9] In support of this determination, the ALJ provided a number of examples of Plaintiff's testimony conflicting with the medical evidence of record. See Tr. at 22.

---

[9]    As Plaintiff does not focus her arguments on the physical aspects of the assigned RFC, or Plaintiff's corresponding physical impairments, the undersigned need not address physical impairments. See Scheduling Order (Doc. No. 21), entered October 19, 2020 (stating that "[a]ny contention for which [specificity] requirements are not met is subject to being disregarded for insufficient development").

The ALJ's Decision reflects adequate consideration of the various factors and of Plaintiff's allegations. Contrary to Plaintiff's assertions that the ALJ erroneously relied, in part, on her ability to perform some activities of daily living ("ADL(s)") and inadequately weighed "uncontroverted" testimony about her "extreme difficulties in interactions with others," Pl.'s Mem. at 6-9 (citations omitted), see id. at 9-10, the ALJ provided a thorough explanation and discussion of her reasoning with citations to the administrative transcript as support to reject Plaintiff's testimony, see Tr. at 22-25.

As to Plaintiff's contentions about the effects of her mental impairments, the ALJ noted that Plaintiff's testimony about her feeling more comfortable being around women, was inconsistent with the record as "some [of] her treating/examining physicians have been men and there is no indication . . . that suggest[s] that she had a problem with men" and that "[n]one of her treatment records shows that [Plaintiff] presented with any difficulty with men in general." Tr. at 22; see, e.g., Tr. at 474-487 (Christopher J. Jenny, PA progress notes); Tr. at 729-31 (Jason S. Prater, M.D. progress notes); Tr. at 732-45 (Dr. Cusack's progress notes). The ALJ also observed that none of Plaintiff's treatment records indicate the level of severity and limitation as Plaintiff claimed during her testimony. Tr. at 22; see, e.g., Tr. at 423-28; Tr. at 724-27. The ALJ further stated that Plaintiff has not had any inpatient hospitalization for her mental condition and her treatment records "note[] significant gaps in

treatment[,]" suggesting that Plaintiff is not as limited as she claims. Tr. at 22 (citing Exhibit 10F (located at Tr. at 732-45)). Thus, the ALJ did not only rely on Plaintiff's ability to perform some ADLs, such as calling and making her own appointments, but also adequately stated the reasons, including discussing Plaintiff's medical and treatment records, for rejecting Plaintiff's testimony.

The ALJ concluded, "[Plaintiff]'s allegations [are] found to be partially supported in that she does experience some limitations in the ability to perform basic work activities and her [RFC] was adjusted accordingly." Tr. at 24. This finding is supported by substantial evidence and need not be disturbed.

## B.    Dr. Cusack's Testimony

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff filed her claim after that date, the undersigned applies the revised rules and Regulations in effect at the time of the ALJ's Decision.

Under the new rules and Regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R.

§ 404.1520c(a).[10] The following factors are relevant in determining the weight to be given to a medical opinion: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).

When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ

---

[10]    "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources").

must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

Here, it does not appear that Dr. Cusack, in his capacity as a licensed mental health counselor, is an "acceptable medical source" as defined in the Regulations. <u>See</u> 20 C.F.R. § 404.1502(a) (listing acceptable medical sources such as licensed physician, psychologist, optometrist, podiatrist); <u>see also</u> Tr. at 39 (Dr. Cusack, when asked whether he is "a licensed psychologist," responding that he is a licensed mental health counselor); Tr. at 38 (Dr. Cusack discussing his education and degrees). In any event, even if Dr. Cusack qualifies an "acceptable medical source," the ALJ articulated reasons for discounting his testimony consistent with the Regulations. <u>See</u> 20 C.F.R. § 404.1520c(b)(2); <u>see also</u> 20 C.F.R. § 404.1520c(c).

The ALJ summarized Dr. Cusack's testimony about Plaintiff's treatment and visits, including Dr. Cusack's testimony that Plaintiff's PTSD is "severe" and she suffers from various symptoms of anxiety. <u>See</u> Tr. at 21; <u>see also</u> Tr. at 39-42 (testimony). The ALJ also noted that Dr. Cusack testified that Plaintiff cannot function on her own, needs assistance from her husband, and would not be able to handle life on her own. Tr. at 21; <u>see also</u> Tr. at 42-44 (testimony). Finally, the ALJ summarized Dr. Cusack's testimony that Plaintiff's Global

Assessment of Functioning ("GAF") scores [11] were consistently below 50; Plaintiff's ability to concentrate, focus, interact with others, and independently function were severely impaired; and that Plaintiff's prognosis would not be improving anytime soon. Tr. at 21; see also Tr. at 44-46 (testimony).

In the Decision, the ALJ found, as—to both Dr. Cusack's opinions about Plaintiff's mental health limitations in conjunction with her ability to function and her GAF scores—"that Dr. Cusack's testimony was not persuasive, in that it is not supported by the evidence of record." Tr. at 21.

The ALJ did not err in rejecting Dr. Cusack's testimony. The ALJ gave examples of why she rejected Dr. Cusack's testimony, such as Plaintiff retaining the ability "to take care of her personal care, talk on the phone, cook and clean at times with only some help from her husband." Tr. at 21; see Tr. at 49-50. The ALJ also noted (albeit in a different part of the Decision) that there were "severe gaps in treatment" and that Dr. Cusack's notes "do[] not indicate any significant worsening of [Plaintiff's] symptoms." Tr. at 22; see Tr. at 732-45.

---

[11]     "[T]he [SSA] has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs[.]'" Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (unpublished) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 2000 WL 1173632 (Aug. 21, 2000)); see also Wilson v. Astrue, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009). As a result of the SSA's refusal to endorse the GAF scale, and due to the subjectivity of the determination involved in assigning the GAF score, courts appropriately assign GAF scores limited weight when reviewing an ALJ's RFC determination. Indeed, as this Court previously noted, "A GAF score has no direct correlation to social security disability regulations." Robinson v. Colvin, No. 8:14-cv-1533-TGW, 2015 WL 12856784, at *4 (M.D. Fla. Aug. 17, 2015); see also Gasaway v. Astrue, No. 8:06-cv-1869-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008) (citing DeBoard v. Comm'r Soc. Sec., 211 F. App'x 411, 415-16 (6th Cir. 2006)) (stating that "[r]eliance upon a GAF score is of questionable value in determining an individual's mental functional capacity").

As to Dr. Cusack's testimony regarding Plaintiff's GAF scores "consistently remain[ing] under 50," the ALJ "took [these scores] into consideration . . . and f[ound] that the evidence does not indicate that [Plaintiff]'s functioning persist[s] at these levels." Tr. at 21. The ALJ also found a GAF score of 65, given on April 1, 2019, "slightly more persuasive than Dr[]. Cusack's testimony" as it was assessed after a personal examination of Plaintiff. Tr. at 25; see also Tr. at 725 (noting the GAF score of 65); Tr. at 727 (noting a GAF score of 55). While the ALJ did not cite any other exhibits in the paragraph rejecting Dr. Cusack's testimony, it is clear the ALJ reviewed all the evidence contained in the administrative transcript in reaching her conclusion. See Tr. at 22-25.[12]

## V.   Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

---

[12] On August 12, 2021, the United States Court of Appeals for the Eleventh Circuit issued Simon v. Comm'r Soc. Sec. remanding the proceedings to the SSA because "the ALJ did not articulate adequate reasons for discounting" the claimant's treating psychiatrist, a consulting psychologist, and the claimant's testimony. See Simon, 7 F.4th at 1097. The undersigned notes that the facts in Simon differ from the facts here, making its holding inapplicable. First, Simon was a pre-2017 Regulations case, which required that a treating psychiatrist's opinion be given controlling weight unless there was good cause to discount it. Here, those Regulations (giving controlling weight to certain medical opinions) do not apply. See supra pp. 11-13. Second, Dr. Cusack does not appear to qualify as an "acceptable medical opinion" under the new Regulations. See id. Third, the ALJ's Decision here adequately explains her reasoning regarding the discounting of Plaintiff's and Dr. Cusack's testimony. See Tr. at 20-25.

15

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 7, 2021.

*James R. Klindt*

JAMES R. KLINDT
United States Magistrate Judge

keh
Copies:
Counsel of Record